# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF ALABAMA
# SOUTHERN DIVISION

| | |
|---|---|
| GINA POWELL, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) CIVIL ACTION 13-0007-WS-C |
| | ) |
| GENTIVA HEALTH SERVICES, INC., | ) |
| | ) |
| Defendant. | ) |

## ORDER

This matter comes before the Court on defendant's Motion for Summary Judgment (doc. 59). The Motion has been briefed and is now ripe for disposition.

## I. Background Facts.

The relevant facts are largely undisputed, at least for summary judgment purposes.[1] Plaintiff, Gina Powell, worked for defendant, Gentiva Health Services, Inc., for almost exactly one year, from November 1, 2010, through November 2, 2011. (Powell Dep. (doc. 63, Exh. B), at 28-29; Merrell Aff. (doc. 63, Exh. C), ¶ 9.) Gentiva's termination of Powell's employment lies at the heart of this litigation. In her Amended Complaint, Powell alleges that Gentiva fired her "on the basis of her disability, morbid obesity, in violation of her rights pursuant to the Americans with Disabilities Act, 42 U.S.C. Section 12112(a)." (Doc. 17, ¶ 10.) Evaluation of this claim requires careful review of record facts concerning Powell's job duties, her physical

---

[1] The Court is mindful of its obligation under Rule 56 to construe the record, including all evidence and factual inferences, in the light most favorable to the nonmoving party. *See Skop v. City of Atlanta, GA*, 485 F.3d 1130, 1136 (11th Cir. 2007). Thus, plaintiff's evidence (to the extent she offers any) is taken as true and all justifiable inferences are drawn in her favor. Also, federal courts cannot weigh credibility at the summary judgment stage. *See Feliciano v. City of Miami Beach*, 707 F.3d 1244, 1252 (11th Cir. 2013) ("Even if a district court believes that the evidence presented by one side is of doubtful veracity, it is not proper to grant summary judgment on the basis of credibility choices."). Therefore, the Court will "make no credibility determinations or choose between conflicting testimony, but instead accept[s] Plaintiff's version of the facts drawing all justifiable inferences in [her] favor." *Burnette v. Taylor*, 533 F.3d 1325, 1330 (11th Cir. 2008).

condition, her performance, Gentiva's corrective action, and the reasons given by Gentiva for her dismissal.

### A. *Powell's Employment and Physical Condition.*

Gentiva is in the business of providing hospice services to terminally ill patients. (Merrell Dep. (doc. 63, Exh. A), at 6-8.) As an Account Executive for Gentiva, Powell's job was to call on physicians, hospitals, and various assisted living and senior living facilities within her assigned territory to solicit new accounts and promote hospice referrals. (Powell Dep., at 37-39.) In essence, Powell functioned as a "field salesperson." (Merrell Dep., at 9.) Gentiva expected Powell and other account executives to make 10 to 12 sales calls per day, educating and giving information to potential referral sources. (*Id.* at 10.) Powell was assigned a specific sales territory with a specific account list. (*Id.* at 13.) Gentiva measured account executives' productivity by comparing the monthly number of hospice admissions they generated to a territory-specific benchmark target. (*Id.* at 14-15.) Gentiva also gauged productivity by reviewing account executives' call documentation, which specified the particular sales calls each salesperson made each day. (*Id.* at 20-21.)[2]

Powell stands at 5'3" and, during the period of her employment at Gentiva, she weighed approximately 230 pounds. (Powell Dep., at 115.) Plaintiff does not recall ever reporting to anyone at Gentiva that (i) she was obese, or (ii) her weight interfered with her ability to perform her job duties. (*Id.* at 114-15, 127.) Powell has never received a medical diagnosis of obesity or morbid obesity, although a doctor's report in 1990 characterized her as a "[s]omewhat overweight white female." (*Id.* at 118-19.) With respect to her weight, plaintiff testified, "I know I'm overweight. I'm not an idiot." (*Id.* at 119.) Nonetheless, Powell is unaware of any underlying medical condition that has caused or contributed to her "overweight" status, nor does she contend that her weight caused or created other health conditions. (*Id.* at 121, 128.) During her employment at Gentiva, Powell did not participate in any "diet program," but she did walk her dog or walk on a treadmill for distances of approximately one mile approximately three days

---

[2] Documenting sales calls in this manner also enabled account executives to track the status of particular referral sources to allow for appropriate follow-up. (*Id.* at 22-23.) In Gentiva's business, "[a] sales call is cumulative." (*Id.* at 22.) A referral might not happen in a single meeting, but instead might require multiple follow-up contacts by the account executive over a period of time before coming to fruition.

per week. (*Id.* at 122-24.) When asked whether her weight impacted her ability to do her job at Gentiva, Powell testified, "Absolutely not." (*Id.* at 126.) Thus, plaintiff's evidence is that her weight neither interfered with her ability to perform required tasks for her job nor impaired her ability to care for herself or engage in day-to-day activities. (*Id.* at 126-27.)

### B.     *The Corrective Counseling Meeting.*

In approximately August 2011, Alease Merrell, Area Vice President of Sales for Gentiva, became responsible for managing Gentiva's sales force of five or six account executives in Mobile, Alabama, including Powell. (Merrell Aff., ¶¶ 3-4.) Merrell had not been involved in Powell's hiring, and was largely unfamiliar with her work performance prior to becoming her supervisor. (Merrell Dep., at 37, 41-42.) In preparation for this new direct supervisory role, Merrell reviewed Powell's record and concluded that she was "overall not meeting performance expectations." (*Id.* at 43-44.) Specifically, Merrell observed that Powell and one other account executive (Stephanie Buehler) were "missing their attainment pretty significantly" (*id.* at 46), meaning that they were not meeting their monthly sales targets. With respect to Powell, Merrell also was concerned that she was not keeping documentation of sales calls in Gentiva's SAMi software system. (*Id.* at 53-54.) When Merrell confronted her about the documentation problem, Powell indicated that she "was having IT issues." (*Id.* at 55.) However, further investigation by Merrell revealed that Powell had not requested help from Gentiva's information technology department and indeed had not even attempted to log in to the SAMi system for lengthy intervals. (*Id.* at 55-56.)[3]

Merrell's concerns about Powell's performance intensified over time. In Merrell's assessment, "her performance continued to decline … and the call documentation obviously was not there." (Merrell Dep., at 57.) Merrell observed that Powell "seemed to be struggling in her role." (*Id.* at 60.) On October 12, 2011, Merrell conducted a corrective action meeting with Powell to address these issues. (*Id.* at 57.) At that time, Powell had failed to meet her goal attainment for eight consecutive months, including a marked further decline in the most recent three-month period. (*Id.* at 61.) The stated purpose of this October 12 session was to impress

---

[3]     In her deposition, Powell sought to explain this performance deficiency by stating, "I'm computer illiterate." (Powell Dep., at 85.) However, she acknowledged, "I remember getting SAMi training" and conceded that she was unaware of any co-workers experiencing trouble with the SAMi software system. (*Id.* at 81, 85.)

-3-

upon Powell "that her performance was not meeting expectations, and that that could lead to termination of her position." (*Id.* at 63.)

At the October 12 meeting, Merrell issued a written Corrective Counseling Record to Powell. (Powell Dep., at 91-92; Merrell Aff., ¶ 5 & Exh. A.) This document reflected, in part, as follows: (i) that Powell had failed to meet expectations with regard to call activity documentation via SAMi; (ii) that there was a "discrepancy" between Powell's explanation of her IT issues and system reports that she had not even been attempting to log on; and (iii) that Powell's sales performance had "declined significantly" in recent months. (Merrell Aff., Exh. A.) The Corrective Counseling Record concluded that "[a]dditional corrective counseling or termination could result if immediate improvement is not demonstrated in the above outlined performance deficits." (*Id.*) At the end of the document, a "Follow-Up Date" of November 14, 2011 was specified. (*Id.*)

During the October 12 meeting, Merrell went over each of these performance issues with Powell. Of central importance to this lawsuit, Merrell also informed Powell that "not only was the SAMi not up to par, but [her] dress and [her] appropriateness was not up to par, and that she wasn't even going to discuss the weight issue at this time." (Powell Dep., at 91.) According to Powell, Merrell's comment was "[t]hat she wasn't going to discuss the weight issue with me and that my jewelry and clothing were inappropriate and that's why my numbers were low." (*Id.* at 146, 102.) Merrell testified that the context for this remark was her perception that Powell's "attire was inappropriate and unprofessional … [a]nd it was at a point where we needed to talk about it." (Merrell Dep., at 66.)[4] So Merrell indicated during the October 12 meeting that Gentiva expected employees to wear professional attire and present a professional appearance. (*Id.* at 66-67.) Powell responded, "I think my clothing choices are cute. … I've put on weight recently, so I've been trying to dress cuter." (*Id.* at 72.) Powell also stated to Merrell, "Not everybody can be as little as you." (*Id.*) Merrell's rejoinder was that Powell's weight was

---

[4] The record shows that Gentiva managers had noticed Powell's penchant for unconventional dress for some time. (Merrell Dep., at 66-70.) For example, one day Powell reported to work in gray and white striped tights, a leopard-print skirt, a headband adorned with feathers, "flamboyant shoes," and a "[l]ong-haired sweater with a very large gemstone broach in the center." (*Id.* at 68.) Merrell believed that such clothing and accessories created a distraction from Powell's function of marketing Gentiva's hospice services to doctors and other health-care professionals, as well as families of terminally ill patients.

irrelevant, because the issue was professional attire. (*Id.* at 73.) It was in that context that the "not even going to discuss the weight issue" comment was made.[5] At any rate, Merrell made no other references to Powell's weight during the October 12 meeting. (Powell Dep., at 103, 106-07; Merrell Dep., at 72-75.) And Powell does not recall any other Gentiva employee on any other occasion making any derogatory comment about her weight. (Powell Dep., at 114.)

In Merrell's view, during the time of her employment at Gentiva, Powell was an "average-size person" who did not appear to be obese. (Merrell Dep., at 73.) Merrell did not perceive Powell to be "a person with a weight problem" and never discussed Powell's weight with Gentiva's human resources or upper management in preparation for the October 12 meeting. (*Id.* at 73-74.) Merrell testified, "I did not make any decisions based on Ms. Powell's weight. I didn't bring it up, she did. It was an inconsequential matter. I didn't think about it because … it had no relevance in any decision that I made about her." (*Id.* at 83.)

### C. *Termination of Powell's Employment.*

At the conclusion of the October 12 meeting, Powell's understanding was that she "had 30 days to improve." (Powell Dep., at 99.) Merrell and other Gentiva officials told her repeatedly, "you have 30 days to improve." (*Id.* at 99, 106.) Notwithstanding Powell's understanding,[6] Merrell elected to take decisive action within a shorter time frame based on a pair of developments. First, Merrell observed that in the weeks following the October 12 meeting, Powell "failed to show improvement in her sales and continued to seem disengaged with regard to her sales efforts," to the point of failing to retrieve and utilize sales materials

---

[5] The foregoing is Merrell's account of her discussion with Powell at the October 12 corrective counseling meeting as it relates to the topic of weight. Of course, for summary judgment purposes, the record is construed in the light most favorable to Powell and her version of the facts must be accepted as true. But Powell's response in her deposition to a query as to whether she (Powell) had initially brought up the issue of her weight during the meeting was, "I don't remember that." (Powell Dep., at 102.) Plaintiff does not deny or rebut Merrell's account of these facts, much less offer an alternative narrative creating a disputed issue of fact that must be resolved in Powell's favor for purposes of a summary judgment analysis. For that reason, the Court credits Merrell's uncontroverted narrative on this point.

[6] Merrell testified that this understanding was inaccurate. According to Merrell, the message conveyed at the October 12 meeting was that Gentiva would follow up with Powell in 30 days, but that "doesn't mean that things can't happen in those 30 days." (Merrell Dep., at 89.) Merrell's testimony was emphatic that the 30-day follow-up period did not mean that Powell was immune from adverse personnel action during that interval. (*Id.* at 89, 93-96.)

provided by Gentiva for an ongoing sales promotion. (Merrell Aff., ¶ 6.) Tellingly, Powell only made seven admissions for the month of October, versus a monthly target of 15 admissions. (*Id.*, ¶ 10.) Second, Merrell was told on two occasions by Gentiva employees that Powell had made misrepresentations that Merrell had declared that Powell would receive credit for home health admissions from outside her territory, when in fact Merrell had said no such thing. (*Id.*, ¶¶ 7-8.) In fact, Powell was only supposed to receive credit for home health accounts that originated in her assigned sales territory. (*Id.*) Merrell viewed this conduct by Powell as demonstrating "a very kind of blatant disregard for the truth." (Merrell Dep., at 79.) After consultation with other Gentiva officials, Merrell decided to terminate Powell's employment for these reasons. (Merrell Aff., ¶ 9; Merrell Dep., at 77-80.)

On or about November 2, 2011, Powell was summoned to a meeting with Merrell and others. At that time, Powell was told, "As of today, you are no longer employed at Gentiva Hospice." (Powell Dep., at 131.) Merrell elaborated, "You misquoted me and now you're going to be let go." (*Id.*) Powell denies recalling any other details about the meeting. (*Id.* at 131-32.) For her part, however, Merrell contends that she discussed all of the aforementioned issues with Powell at the termination meeting. (Merrell Dep., at 84.)

Powell was not the only Account Executive at Gentiva's Mobile location whose employment was terminated for poor performance during that time period. Just weeks before Powell was fired, Gentiva discharged Stephanie Buehler based on her work performance. (Powell Dep., at 128.) Buehler is "[a]bsolutely not" overweight, in Powell's estimation. (*Id.* at 129.) Merrell echoed that Buehler is not obese, that she is "[t]all and very thin," and that she was fired three weeks before Powell because of poor and declining sales performance. (Merrell Dep., at 99-101.)

## II.  Summary Judgment Standard.

Summary judgment should be granted only "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Rule 56(a), Fed.R.Civ.P. The party seeking summary judgment bears "the initial burden to show the district court, by reference to materials on file, that there are no genuine issues of material fact that should be decided at trial." *Clark v. Coats & Clark, Inc.,* 929 F.2d 604, 608 (11th Cir. 1991). Once the moving party has satisfied its responsibility, the burden shifts to the non-movant to show the existence of a genuine issue of material fact. *Id.* "If the nonmoving party fails to make

'a sufficient showing on an essential element of her case with respect to which she has the burden of proof,' the moving party is entitled to summary judgment." *Id.* (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986)) (footnote omitted). "In reviewing whether the nonmoving party has met its burden, the court must stop short of weighing the evidence and making credibility determinations of the truth of the matter. Instead, the evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Tipton v. Bergrohr GMBH-Siegen*, 965 F.2d 994, 999 (11th Cir. 1992) (internal citations and quotations omitted). "Summary judgment is justified only for those cases devoid of any need for factual determinations." *Offshore Aviation v. Transcon Lines, Inc.*, 831 F.2d 1013, 1016 (11th Cir. 1987) (citation omitted).

The Eleventh Circuit has expressly rejected the notion that summary judgment should seldom be used in employment discrimination cases because they involve issues of motivation and intent. *See Wilson v. B/E Aerospace, Inc.*, 376 F.3d 1079 (11th Cir. 2004). Rather, "the summary judgment rule applies in job discrimination cases just as in other cases. No thumb is to be placed on either side of the scale." *Id.* at 1086 (citation omitted); *see also Williamson v. Clarke County Dep't of Human Resources*, 834 F.Supp.2d 1310, 1318 (S.D. Ala. 2011) (recognizing and applying rule that summary judgment standard is applied equally in employment discrimination cases as in other kinds of federal actions).

**III. Analysis.**

*A. Plaintiff Has Not Shown that Her Obesity is a Disability.*

As framed in the single-count Amended Complaint, plaintiff's claim is that defendant violated the Americans with Disabilities Act, 42 U.S.C. §§ 12101 *et seq.* ("ADA"), by discriminating against her based on a disability.[7] The Amended Complaint alleges that

---

[7] This analysis applies the ADA as amended by the ADA Amendments Act of 2008, Pub.L. No. 110-325, 122 Stat. 3553 ("ADAAA"), which took effect on January 1, 2009. As described *supra*, all relevant events underlying Powell's ADA claim took place in 2011, well after the ADAAA's effective date. Defendant admits that the post-ADAAA version of the ADA governs. (*See* doc. 63, at 13.) Accordingly, pre-ADAAA authorities are helpful here only insofar as they do not conflict with provisions of the ADAAA, which effectively liberalized the scope of the ADA after a series of Supreme Court cases narrowed such coverage beyond the parameters desired by Congress. For that reason, the authorities cited by movant will not be considered to the extent that they conflict (and some of them do) with the "regarded as" definition and principles articulated in the ADAAA and accompanying regulations.

"Plaintiff's disability was morbid obesity" (doc. 17, ¶ 6), and that "Plaintiff was terminated by Defendant as a result of discrimination based on her disability" (*id.*, ¶ 5). The <u>only</u> claim pleaded in the Amended Complaint is that Gentiva violated the ADA when it "terminated Plaintiff on the basis of her disability, morbid obesity." (*Id.*, ¶ 10.)[8]

Under the ADA, a "disability" is "a physical or mental impairment that substantially limits one or more major life activities of such individual." 42 U.S.C. § 12101(1)(A). Typically, a plaintiff's status as being overweight, without more, has been held not to constitute a disability within the meaning of the statute.[9] That said, the Court need not offer any grand pronouncements about the general relationship between a person's weight and the term "disability" as defined in the ADA. Rather, Powell's ADA status turns on an individualized inquiry about her specific condition and its accompanying limitations (if any).[10] So the critical

---

[8] Although the Amended Complaint repeatedly uses the term "morbid obesity" to describe Powell's impairment, the record contains no evidence tending to show (i) the clinical meaning of the term "morbid obesity," or (ii) that such a diagnosis or classification applies to Powell's condition.

[9] *See, e.g., Greenberg v. BellSouth Telecommunications, Inc.*, 498 F.3d 1258, 1264 (11th Cir. 2007) ("except in rare circumstances, obesity is not considered a disabling impairment") (citation omitted); *Francis v. City of Meriden*, 129 F.3d 281, 286 (2nd Cir. 1997) ("obesity, except in special cases where the obesity relates to a physiological disorder, is not a 'physical impairment' within the meaning of the statutes"); *Frank v. Lawrence Union Free School Dist.*, 688 F. Supp.2d 160 (E.D.N.Y. 2010) ("obesity is not a disability under the ADA"); *Lescoe v. Pennsylvania Dep't of Corrections – SCI Frackville*, 2012 WL 505896, *2 (3rd Cir. Feb. 16, 2012) (corrections officer's obesity was not a disability under ADA where plaintiff "did not establish any major life activities that were adversely affected by his weight" and "failed to allege that his weight is the result of a physiological disorder"); *Lowe v. American Eurocopter, LLC*, 2010 WL 5232523, *7 (N.D. Miss. Dec. 16, 2010) ("many courts presented with the issue of obesity as a disability have held that such an impairment is not recognized under the ADA").

[10] *See generally Albertson's, Inc. v. Kirkingburg*, 527 U.S. 555, 566, 119 S.Ct. 2162, 144 L.Ed.2d 518 (1999) (referencing ADA "statutory obligation to determine the existence of disabilities on a case-by-case basis"); *Sutton v. United Air Lines, Inc.*, 527 U.S. 471, 483, 119 S.Ct. 2139, 144 L.Ed.2d 450 (1999) ("whether a person has a disability under the ADA is an individualized inquiry"); *Garrett v. University of Alabama at Birmingham Board of Trustees*, 507 F.3d 1306, 1311 (11th Cir. 2007) (in Rehabilitation Act context, "[e]ach claim of disability must be considered on a case-by-case basis. When the symptoms of an impairment vary widely from person to person, an individualized assessment of the effect of an impairment is particularly necessary.") (citation and internal marks omitted).

question for purposes of assessing whether Powell is "disabled" for ADA purposes is whether her obesity substantially limits one or more of her major life activities.

Plaintiff's own testimony unequivocally establishes that her weight imposes no such limitations. While acknowledging that she was "overweight," Powell was adamant that her weight neither interfered with her ability to perform her job nor impaired her ability to care for herself or engage in day-to-day activities. (Powell Dep., at 126.) She denied that her weight affected her ability to walk, and indicated that she was walking as far as a mile (without aids) as often as three times per week during the relevant period. (*Id.* at 126-27.) She denied needing assistance in any activities because of her weight. (*Id.* at 127.) And she denied experiencing any health conditions caused or contributed to by her weight. (*Id.* at 128.) On this record, then, no reasonable factfinder could conclude that Powell's obesity substantially limited one or more of her major life activities, so as to render her "disabled" within the meaning of § 12101(1)(A).[11] Accordingly, defendant is entitled to summary judgment on the ADA claim as pleaded in the Amended Complaint.

### B. Plaintiff's Purported "Regarded-As" Claim.

In her summary judgment brief, Powell makes no attempt to rebut or respond to Gentiva's argument that the record does not establish that her obesity is a physical impairment that substantially limits her in any major life activities. Instead, Powell shifts gears and asserts for the first time, "The Plaintiff's claim for disability is based on perceived disability." (Doc. 70, at 2.) Plaintiff further maintains that "the Defendant regarded her as obese" and that "there is sufficient evidence for a reasonable juror to find that Plaintiff was terminated based on her perceived obesity." (*Id.* at 2-3.) Certainly, the ADA includes in its definition of "disability" the circumstance of "being regarded as having" a physical or mental impairment. 42 U.S.C. §

---

[11] In that regard, defendant properly relies on *Greenberg v. BellSouth Telecommunications, Inc.*, 498 F.3d 1258 (11th Cir. 2007), in which the plaintiff's ADA claim alleged, among other things, that he was fired because he was obese. The Eleventh Circuit affirmed summary judgment against the plaintiff, reasoning that "Greenberg has not shown that he has an impairment that substantially limits him in one or more major life activities," because Greenberg admitted that he was able to care for himself and identified no class of jobs that he was unable to work because of his weight. Although *Greenberg* pre-dates the ADAAA, nothing in those amendments would appear to alter the Eleventh Circuit's conclusion on the record presented. Certainly, Powell has not argued that *Greenberg*'s determination as to the plaintiff's "actual disability" status is inapplicable or was somehow abrogated by passage of the ADAAA.

12102(1)(C). Nonetheless, plaintiff's purported "regarded-as" claim under the ADA cannot withstand scrutiny for at least three distinct reasons.

### 1. No "Regarded-As" Claim Has Been Joined in this Action.

First, Powell's attempt to interject a "regarded-as" claim into this case via summary judgment brief is procedurally improper. Review of the Amended Complaint reveals no allegation that Gentiva regarded Powell as disabled. Plaintiff's pleading did not reasonably place defendant on notice that her ADA claim was predicated on a "regarded-as" theory. To the contrary, the Amended Complaint is upfront and unflinching in its expression that Gentiva is liable under the ADA because Powell suffered from an actual disabling impairment. Among other examples, the pleading alleges that "Plaintiff is an otherwise qualified individual with a disability, morbid obesity" and that "Defendant terminated Plaintiff on the basis of her disability, morbid obesity, in violation of her rights pursuant to the" ADA. (Doc. 17, ¶¶ 5, 10.) The Amended Complaint is crystal clear in its assertion that Powell "was a disabled person within the meaning of the" ADA and that "Plaintiff's disability was morbid obesity." (*Id.*, ¶ 6.) A fair reading of Powell's Amended Complaint yields nary a whiff of an inference that she seeks to hold Gentiva liable under the ADA on a "regarded-as" theory. Authorities are legion for the proposition that a plaintiff may not retool her pleading via summary judgment brief to articulate a different species of claim. *See, e.g., American Federation of State, County and Mun. Employees Council 79 v. Scott*, 717 F.3d 851, 863 (11th Cir. 2013) ("A plaintiff may not amend her complaint through argument in a brief opposing summary judgment or one advocating summary judgment.") (citation and internal quotation marks omitted).[12]

Simply put, a plaintiff may not opportunistically hopscotch from the ADA theory pleaded in her complaint to different one not pleaded in her complaint, all in midstream and without amending her underlying pleading. *See generally Hale v. King*, 642 F.3d 492, 502 (5th Cir. 2011) (rejecting plaintiff's "regarded-as" claim where his "allegations only establish that the

---

[12] *See also Miccosukee Tribe of Indians of Florida v. United States*, 716 F.3d 535, 559 (11th Cir. 2013) ("In this circuit, a plaintiff cannot amend his complaint through argument made in his brief in opposition to the defendant's motion for summary judgment. … We therefore decide the Tribe's appeal of the Count IV judgment by assessing the record in the light of Count IV's allegations, as stated in the complaint."); *GeorgiaCarry.Org, Inc. v. Georgia*, 687 F.3d 1244, 1258 n.27 (11th Cir. 2012) ("It is well-settled in this circuit that a plaintiff may not amend the complaint through argument at the summary judgment phase of proceedings.").

Appellees denied him access to prison programs and facilities because of his impairments," not that defendants regarded him as being impaired).[13] After all, the purpose of Rule 8(a)(2), Fed.R.Civ.P., "is to give the defendant fair notice of what the claim is and the grounds upon which it rests." *Davis v. Coca-Cola Bottling Co. Consol.*, 516 F.3d 955, 974 (11th Cir. 2008) (citations and internal quotation marks omitted). Alleging that Gentiva violated the ADA by firing Powell because she is morbidly obese in no way gave Gentiva fair notice that Powell really claimed that Gentiva violated the ADA by terminating her employment because it regarded her as having a physical or mental impairment. No "regarded-as" claim appearing in the Amended Complaint, Powell cannot successfully invoke such a claim in response to Gentiva's summary judgment motion.

### 2. *The Record Does Not Support a Reasonable Inference that Gentiva Regarded Powell as Disabled.*

Second, even if Powell had properly pleaded a "regarded-as" claim under the ADA, summary judgment would remain appropriate because the record viewed in the light most favorable to plaintiff does not support a reasonable inference that Gentiva regarded her as having an impairment.

As previously stated, an individual is covered under the ADA if he or she is "regarded as having such an impairment." 42 U.S.C. § 12102(1)(C). The statute, as amended by the ADAAA, elaborates that a plaintiff establishes a "regarded-as" claim by showing "that he or she has been subjected to an action prohibited under this chapter because of an actual or perceived physical or mental impairment whether or not the impairment limits or is perceived to limit a

---

[13] *See also Marshall v. Mayor and Alderman of City of Savannah, Ga.*, 2010 WL 537852, *8 (11th Cir. Feb. 17, 2010) ("We have previously rejected the argument, however, that a mere generalized claim of discrimination is sufficient to raise a particularized Title VII claim."); *Coons v. Georgia Pacific Corp.*, 829 F.2d 1563, 1568-69 (11th Cir. 1987) (rejecting plaintiff's attempt to expand Title VII claim beyond narrow denial-of-promotion claim asserted in complaint, and deeming purported new claims noncompliant with Rule 8(a)); *Gordon v. Board of School Com'rs of Mobile County*, 2011 WL 773033, *5 n.13 (S.D. Ala. Mar. 1, 2011) ("At any rate, the Complaint does not even hint at a 'regarded as' ADA claim, and a plaintiff cannot use his summary judgment brief as a *de facto* amendment to his complaint."); *Coffey v. County of Hennepin*, 23 F. Supp.2d 1081, 1088 (D. Minn. 1998) (where plaintiff alleged for the first time in opposing summary judgment motion on ADA claim that employer regarded her as disabled, "the Court need not address this issue because Plaintiff failed to plead this theory in her Complaint; therefore, Defendants are prejudiced because of lack of notice of the claim").

major life activity." *Id.* § 12102(3)(A). Regulations promulgated by the Equal Employment Opportunity Commission emphasize that an individual is "regarded as having such an impairment" for ADA purposes "if the individual is subjected to a prohibited action because of an actual or perceived physical or mental impairment, whether or not that impairment substantially limits, or is perceived to substantially limit, a major life activity." 29 C.F.R. § 1630.2(*l*)(1).[14] "Prohibited actions" include termination of employment. *Id.*

The fundamental evidentiary flaw in plaintiff's "regarded-as" theory is that the record is devoid of facts from which one could reasonably infer that Gentiva perceived Powell to have a physical or mental impairment. Indeed, the only evidence Powell offers on this point is her supervisor's comment during the corrective counseling meeting that "she wasn't even going to discuss the weight issue at this time," that her jewelry and clothing were inappropriate, and that this is why her sales numbers were so low. Plaintiff would draw an inference from this comment that Merrell viewed Powell's appearance as a whole (clothing, accessories, weight) as negatively affecting her sales performance. Assuming (without deciding) that such an inference is reasonable, it would show only that Merrell viewed Powell as overweight, not that Merrell

---

[14] This post-ADAAA formulation of the "regarded-as" standard is markedly different from its predecessor. In the pre-ADAAA regime, courts found liability in regarded-as cases only where "(1) a covered entity mistakenly believes that a person has a physical impairment that substantially limits one or more major life activities, or (2) a covered entity mistakenly believes that an actual, nonlimiting impairment substantially limits one or more major life activities." *Sutton*, 527 U.S. at 489. Thus, "regarded-as" liability hinged on the employer's belief that the employee's actual or perceived impairment substantially limited one or more major life activities. Under the new ADAAA standard, however, perception of an impairment is all that is necessary, "***whether or not the impairment limits or is perceived to limit a major life activity***." 42 U.S.C. § 12102(3)(A) (emphasis added); *see also Rubano v. Farrell Area School Dist.*, --- F. Supp.2d ----, 2014 WL 66457, *11 (W.D. Pa. Jan. 8, 2014) ("After the 2008 amendments to the ADA definition of disability, all that an ADA plaintiff must show to raise a genuine issue of material fact for the 'regarded as' prong is that a supervisor knew of the purported disability."); *Pinckney v. Federal Reserve Bank of Dallas*, 2013 WL 5461873, *9 (W.D. Tex. Sept. 30, 2013) ("The ADAAA makes clear that the 'regarded as' disabled prong no longer requires a showing that the employer perceived the individual to be substantially limited in a major life activity."). "Thus, a 'regarded as' claim under the ADAAA is much easier to prove than a 'regarded as' claim before the ADAAA." *Rocha v. Coastal Carolina Neuropsychiatric Crisis Services, P.A.*, --- F. Supp.2d ----, 2013 WL 5651801, *5 (E.D.N.C. Oct. 16, 2013) (citations omitted). In the context of Powell's claims, "a plaintiff now might be considered disabled due to obesity under the ADA if her employer *perceived* her weight as an impairment." *Lowe*, 2010 WL 5232523, at *7.

perceived Powell's weight to constitute a physical impairment. That is an important distinction. Plaintiff's argument improperly equates a physical characteristic (*i.e.*, overweight status) with an impairment. However, plenty of people with an "undesirable" physical characteristic are not impaired in any sense of the word. To illustrate the point, suppose plaintiff wore her hair in a neon green mohawk. Such an unconventional hairstyle choice might be viewed as unprofessional, and might well impede her efforts to sell hospice services to physicians and senior living facilities, but it obviously is not a physical impairment. The same goes for weight. An overweight sales representative may have difficulty making sales if the prospective customer perceives her appearance to be unprofessional, but that does not render her weight a "physical or mental impairment" within any rational definition of the phrase. At most, plaintiff's evidence is that Merrell perceived that Gentiva customers were less likely to purchase hospice services from an overweight sales representative (just as they would be less likely to purchase such services from a sales representative sporting a green mohawk). Neither the hairstyle nor the weight is an actual or perceived impairment in that scenario.[15] Yet that is all plaintiff offers on summary judgment.

Of course, weight can be a physical impairment or, more precisely, an employer may <u>perceive</u> an employee's overweight status to constitute a physical impairment. For example, suppose an employer believes that an overweight job applicant cannot climb a ladder, or walk across a parking lot, or climb flights of stairs, and therefore does not hire the overweight individual for a job that requires such activities. That might give rise to "regarded-as" status for an ADA claim in the post-ADAAA world. But that is not what we have here. The EEOC defines the term "physical or mental impairment" under the new version of the ADA as meaning "[a]ny physiological disorder or condition, cosmetic disfigurement, or anatomical loss affecting

---

[15] Authority, both before and after the ADAAA, supports this proposition and rejects the notion that a disfavored physical characteristic is a disability under the ADA. *See, e.g., Francis*, 129 F.3d at 285-86 (noting that "a mere physical characteristic [such as moderate obesity] does not, without more, equal a physiological disorder" and concluding that "physical characteristics that are 'not the result of a physiological disorder' are not considered 'impairments' for the purposes of determining either actual or *perceived* disability") (citations omitted); *Sibilla v. Follett Corp.*, 2012 WL 1077655, *9 (E.D.N.Y. Mar. 30, 2012) (even after passage of ADAAA, "[t]he fact that an employer regards an employee as obese or overweight does not necessarily mean that the employer regards the employee as suffering a physical impairment").

one or more body systems" or "[a]ny mental or psychological disorder." 29 C.F.R. § 1630.2(h)(1)-(2). Powell points to not a shred of evidence that Gentiva viewed her weight as a physiological disorder that affected any of her body systems. She does not suggest that Gentiva viewed her weight as affecting her at all. That Gentiva may have believed its customers did not want to buy hospice services from an overweight salesperson is no more a perception of an impairment than a belief that customers do not want to buy hospice services from a salesperson with a brightly colored, rebellious hairstyle. Neither circumstance would give rise to a viable "regarded-as" claim under the ADA.[16] Accordingly, defendant's Motion for Summary Judgment is due to be **granted** for want of evidence that Gentiva perceived Powell to have an impairment.

### 3. *Plaintiff Has Not Made a Showing of Pretext.*

Third, even if Powell had properly pleaded a "regarded-as" ADA claim in her Amended Complaint (which she did not), and even if Powell had pointed to evidence that Gentiva perceived her to have a physical or mental impairment (which she has not), her ADA cause of action would still fail because she cannot make the requisite showing of pretext.

As both sides recognize, circumstantial ADA claims such as Powell's are subject to the familiar *McDonnell Douglas* burden-shifting framework.[17] *See, e.g., Holly v. Clairson*

---

[16] A suggestion that an employee lose weight is analogous to a suggestion that an employee seek counseling, which has been repeatedly held not to suffice for a "regarded-as" claim in the post-ADAAA regime. *See McNally v. Aztar Indiana Gaming Co., LLC*, 2014 WL 300433, *3 (S.D. Ind. Jan. 28, 2014) (finding that no reasonable jury could conclude that employer perceived plaintiff as having a mental disability, where manager "stated that he knew [plaintiff] was going through a lot and suggested that he seek professional counseling" and human resources director met with him on one occasion "out of concern for his emotional well-being"); *Douglas v. District of Columbia Housing Authority*, --- F. Supp.2d ----, 2013 WL 5764842, *8 (D.D.C. Oct. 25, 2013) (in ADAAA context, "a human resource officer's mere suggestion that an employee seek counseling is insufficient to establish that the plaintiff is regarded as disabled").

[17] Powell has not argued that her claim is properly analyzed under a "direct evidence" standard, so as to remove it from the purview of *McDonnell Douglas*. At any rate, the record is devoid of direct evidence of discrimination. "Direct evidence is evidence, that, if believed, proves the existence of a fact without inference or presumption." *Morris v. Emory Clinic, Inc.*, 402 F.3d 1076, 1081 (11th Cir. 2005) (alterations and internal quotation marks omitted). Here, Powell has marshaled no evidence proving (without inference or presumption) that Gentiva terminated her employment because it perceived her weight to be an impairment; therefore, the circumstantial framework is properly applied.

*Industries, L.L.C.*, 492 F.3d 1247, 1255 (11th Cir. 2007) ("Under the controlling law in this Circuit, the burden-shifting analysis of Title VII employment discrimination claims is applicable to ADA claims.") (citation and internal marks omitted); *Cleveland v. Home Shopping Network, Inc.*, 369 F.3d 1189, 1193 (11th Cir. 2004) (applying *McDonnell Douglas* circumstantial evidence framework in ADA context); *Wascura v. City of South Miami*, 257 F.3d 1238, 1242 (11th Cir. 2001) ("In the absence of direct evidence of discrimination, a plaintiff may establish a prima facie case of an ADA violation through circumstantial evidence using the familiar burden-shifting analysis employed in Title VII employment discrimination cases.") (footnote omitted). Under this methodology, the initial burden rests with the plaintiff to establish a *prima facie* case of discrimination, after which the burden of production shifts to the defendant to articulate a legitimate non-discriminatory reason for the challenged action. *See Cleveland*, 369 F.3d at 1193; *Wascura*, 257 F.3d at 1242–43. When a non-discriminatory reason is given, the plaintiff is "left with the ultimate burden of proving that [the employer] intentionally discriminated against her because of her disability." *Cleveland*, 369 F.3d at 1193; *see also Wascura*, 257 F.3d at 1243.

Assuming (without deciding) that plaintiff has established a *prima facie* case of disability discrimination, Gentiva has plainly articulated a legitimate, nondiscriminatory reason for terminating her employment in November 2011. In particular, Gentiva's evidence is that it fired Powell because of cumulative performance issues, including chronically low and declining sales numbers, failure to record sales activities and utilize available marketing materials, and multiple misrepresentations to Gentiva colleagues concerning her supervisor's determination of how sales credit would be allocated for home health admissions. To defeat Gentiva's summary judgment motion, Powell must make a showing of pretext as to these stated reasons. To satisfy her burden, Powell's evidence "must reveal such weaknesses, implausibilities, inconsistencies, incoherencies or contradictions in the employer's proffered legitimate reasons for its actions that a reasonable factfinder could find them unworthy of credence." *Vessels v. Atlanta Independent School System*, 408 F.3d 763, 771 (11th Cir. 2005) (citation omitted); *see also Rioux v. City of Atlanta, Ga.*, 520 F.3d 1269, 1278 (11th Cir. 2008) ("The plaintiff must demonstrate weaknesses or implausibilities in the employer's proffered legitimate reasons for its action sufficient for a reasonable factfinder to disbelieve the reasons."). "If the proffered reason is one that might motivate a reasonable employer, a plaintiff cannot recast the reason but must meet it head on and rebut it .... Quarreling with that reason is not sufficient." *Wilson*, 376 F.3d at 1088.

Powell's evidence of pretext is scant.  Primarily, she relies on Merrell's remark about "not even going to discuss the weight issue" at the corrective counseling meeting.  However, this singular stray, ambiguous remark in the context of a performance-focused counseling session several weeks before Powell's dismissal does not demonstrate weakness or incoherence in Gentiva's stated explanation for terminating her employment.  *See generally Ritchie v. Industrial Steel, Inc.*, 2011 WL 1899570, *5 (11th Cir. May 19, 2011) ("stray remarks that are isolated and unrelated to the challenged employment decision are insufficient to establish pretext") (citation and internal quotation marks omitted).  Plaintiff also attempts to derive pretext from Gentiva's decision to terminate her employment before the end of the follow-up period after the corrective counseling meeting.  But there is no evidence that the 30-day follow-up period was tantamount to a guarantee that Powell would remain employed throughout that period (even if she made misrepresentations to manipulate her sales numbers in the interim), or that dismissal of Powell before said period expired was in any way conflicting, contradictory, or inconsistent with Gentiva's generally applicable policies or practices.  In short, plaintiff has not shown that the timing of her discharge was suspicious or that it somehow cast doubt on the veracity of defendant's stated reasons for letting her go.  Thus, even if Powell could overcome the pleading obstacle to her "regarded-as" claim, and even if she had evidence supporting an inference that Gentiva perceived her weight to be a physical impairment, her ADA disability discrimination claim would nonetheless fail on the merits for lack of evidence that Gentiva's proffered legitimate, non-discriminatory reasons for terminating her employment were pretextual.

## IV. Conclusion.

For all of the foregoing reasons, Defendant's Motion for Summary Judgment (doc. 59) is **granted**.  There being no genuine issues of material fact as to any claim or cause of action asserted herein, this action is **dismissed with prejudice**.  A separate judgment will enter.

DONE and ORDERED this 12th day of February, 2014.

s/ WILLIAM H. STEELE
CHIEF UNITED STATES DISTRICT JUDGE